# The Norwich and Worcester Rail-road Company *against* Cahill :

### IN ERROR.

Where certain declarations, offered in evidence by the plaintiff, in support of a single issue, were admitted, and that issue, notwithstanding, was found in favour of the defendants; it was held, that as the evidence had done the defendants no harm, they were not entitled to a new trial, by reason of its admission.

So where the defendants, after the proof of such declarations, asked for a postponement of the trial, to procure the testimony of a witness, to rebut those declarations, which was refused ; it was held, that as the defendants had not been injured by the absence of the witness, he was not entitled to a new trial, on account of such refusal.

The plaintiff, in an action against a rail-road company, for services performed, claimed, that *S.,* having made a contract with the defendants to build their extension rail-road, made another contract with the plaintiff, to build a certain portion of that road; that the plaintiff built the road according to his contract, but the embankments across two coves on the route, settled so as to require additional work ; and that the defendants, by their agents, employed the plain-

tiff to do that work, which was the subject of the action. In support of this claim, the plaintiff, among other evidence, called *S.*, as a witness, to prove what *D.*, one of the directors of the rail-road company, and one of the committee for building the road, had said and done, as the agent of the company, in relation to that work. From the testimony of *S.* it appeared, that when the additional work became necessary, *D.* inquired of *S.* what was to be done in consequence of the settling of the embankments; that *S.* asked him, if the company expected him, *S.*, to do the work at the coves, where it had settled; that *D.* replied, that the company did not expect him to pay the expense—they only wanted to know his opinion as to the best mode of doing it. Held, 1. that as this was said by *D.*, while inquiring as to the best mode of making the necessary repairs, and while acting within the scope of his authority, the declarations so made by him were binding upon the defendants, to the same extent as if they had been made by the defendants themselves, and consequently, were admissible in evidence against them; 2. that this evidence was not exceptionable, because *D.* was only one of several agents of the company; for any deficiency in the proof of authority might be supplied by other evidence; or if exceptionable for this reason, its admission was not a ground of error, because the objection was not made in that form at the trial.

The granting or refusal of a new trial, being a matter entirely within the discretion of the court, is not a ground of error.

Where a new trial was sought, for the purpose of procuring a witness to rebut evidence adduced on the trial, by which the party claimed to be surprised; and it did not appear, that the testimony of this witness would overbalance such evidence, or that it could not have been produced on the trial, by the use of due diligence, or that there was not an abundance of other evidence to support the same claim, or that injustice was done, or if a new trial were granted, that a different result would be produced; it was held, that a new trial was properly refused.

*New-London, July, 1847.*

Norwich and Worcester Rail-road Co. *v.* Cahill.

THIS was an action of book debt, brought originally by *John T. Cahill* against the *Norwich and Worcester Rail-road Company.* The cause was referred to auditors, who made a report in favour of the plaintiff, for 5336 dollars, 25 cents, with interest from the 1st day of *December,* 1843. The defendants filed their remonstrance against the acceptance of this report; and, for reasons set forth in their remonstrance, claimed, that the report ought to be set aside and a new hearing be had.

The material facts stated in the remonstrance and in the answer of the plaintiff thereto, so far as they are sustained by the finding of the court, are the following.

The demand of the plaintiff was for certain services rendered by him, in the construction of the extension rail-road of the defendants. The defendants, on the hearing before the auditors, read in evidence a certain contract between them and *Miner C. Story,* by which he had agreed to construct the road

*New-London,*
*July, 1847.*

Norwich and
Worcester
Rail-road Co.
*v.*
Cahill.

for the company, and another contract between *Story* and the plaintiff, in which the latter had agreed to construct a part of the road, in the manner specified in *Story's* contract with the company; and they claimed, that whatever services were rendered by the plaintiff, and charged in his account, were performed by him, under and by virtue of those contracts.

The plaintiff denied, that they were so performed; but if they were embraced within the terms of those contracts, he claimed that *Story* was induced to make his contract with the company, by means of certain gross misrepresentations of *James Lawrie,* the engineer of the defendants, employed by them to make the contract and superintend the building of the road; and that in consequence, the contract made with him was void. And in support of this claim, he offered the testimony of *Story* and himself, to prove, that *Lawrie,* at the time of making the contract, and in the presence and hearing of the plaintiff, stated, that the mud in two coves on the route was not more than two feet deep, and that the embankments placed thereon would not sink more than two feet below the surface of the ground.

To the admission of this testimony the defendants objected, on the ground that the declarations were made in reference to a contract to which the plaintiff was no party, and with which, at the time, he was in no way connected; and also, on the ground that all declarations made before and at the time of executing the contract with *Story,* were merged in that contract. The plaintiff did not claim, that the testimony was admissible for any other purpose, than to show that the contract was void, by reason of fraud.

The defendants, being surprised by the testimony offered, immediately despatched a messenger to *Boston,* where *Lawrie* then was, to procure his attendance, for the purpose of repelling the testimony as to his declarations; but he was unable to attend before the following *Monday.* The defendants then asked for a postponement of the cause, until that time, or some other convenient time, for the purpose of enabling them to procure the testimony of *Lawrie.* They urged as the reason for such postponement, that they were surprised, by the testimony of the plaintiff; that no claim had been made by the plaintiff, to the knowledge of the defendants, that any such false representations had been made; that they had taken the

deposition of *Lawrie*, previous to the trial; and that the plaintiff's counsel who were present, on their cross-examination, made no inquiry of him in relation to any such declaration; and they offered to comply with such terms, as to the costs and expenses of the plaintiff, as the auditors might prescribe.

New-London,
July, 1847.

Norwich and
Worcester
Rail-road Co.
v.
Cahill.

But the auditors, having previously, upon the application of the defendants, postponed the hearing for the purpose of enabling them to procure the attendance of *Lawrie*, at great inconvenience and expense to the plaintiff, and the defendants, instead of procuring the attendance of the witness, had merely taken his deposition, deemed it unreasonable to subject the plaintiff to further trouble and inconvenience, and refused to postpone the hearing.

By consent of parties, the testimony as to the declarations of *Lawrie* was received, subject to the objection; and it was agreed, that the question respecting its admissibility, should be discussed, by the counsel, in their arguments, and be decided by the auditors, when making the award.

But the auditors, finding all the evidence offered by the plaintiff, for the purpose of showing that the contract was void, by reason of fraud, to be insufficient, deemed it unnecessary to decide the question as to the admissibility of the evidence, and found the contract a valid and subsisting one, and allowed the plaintiff nothing for any services except such as they found to have been performed after the contract had been fulfilled.

The plaintiff claimed, that the services rendered by him were for extra work over and above the requirements of the contracts, and performed by him after these contracts had been fulfilled, with the knowledge of the defendants, and under their employment, through their agents. And among other evidence, he offered *Story*, as a witness, to prove a conversation between him and *Theodore Dehone*, who was, at the time, a director of the rail-road company, and one of the committee for building the road, consisting of himself and four other persons. *Story* testified, that *Dehone* called upon him, and inquired what was to be done in consequence of the settling of the embankments in the coves upon the road; and *Story* asked him, if the company expected him to do the work where it had so settled. To which *Dehone* replied, that the company did not expect him to pay the expense; they only

*New-London,*
*July, 1847.*

Norwich and
Worcester
Rail-road Co.
*v.*
Cahill.

wanted his opinion as to the best mode of doing the work. To the admission of this testimony the defendants objected; but the testimony was received by the auditors.

The defendants further claimed, that a new hearing should be granted, because they could show, by the testimony of *Lawrie* and *Dehone*, that the testimony as to the declarations by them respectively made, was untrue.

The court overruled the claims of the defendants, accepted the report of the auditors, and rendered judgment in favour of the plaintiff, for the amount found due to him by the auditors. The defendants thereupon brought a writ of error before this court, to obtain a reversal of such judgment, assigning for error the decision of the court upon the several matters set forth in the remonstrance, and its refusal to set aside the report, and to grant a new hearing.

*Strong* and *Rockwell,* (with whom was *Wait,*) for the plaintiffs in error, contended, 1. That the testimony in relation to the alleged declarations of *James Lawrie,* was not admissible. In the first place, the declarations, if made at all, were made to a different person, at a different time, and in relation to a different contract. Secondly, this testimony was a surprise upon the party; and they took immediate measures to repel it. After the evidence was given in, the plaintiffs in error found, that they could prove the statement to be false. This would have afforded ground for a new trial, or an injunction in chancery against the judgment at law; and *a fortiori,* for a rehearing before auditors. *Jackson* d. *Gardner* & al. v. *Laird,* 8 *Johns. R.* 489. *Mercer* v. *Sayre,* 7 *Johns. R.* 306. *Chatfield* v. *Lathrop,* 6 *Pick.* 417. *Guyot* & ux. v. *Butts* & al. 4 *Wend.* 579. Countess of *Gainsborough* v. *Gifford,* 2 *P. Wms.* 424. 2 *Sto. Eq. c.* 23. *s.* 894. Thirdly, the auditors improperly refused to postpone the hearing for the purpose of procuring the attendance of *Lawrie ;* for which a new trial ought to be granted. *The People* v. *Vermilyea,* 7 *Cowen,* 369. *Hooker* v. *Rogers,* 6 *Cowen,* 577. *Ogden* v. *Payne,* 5 *Cowen,* 15. *The Bank of Utica* v. *Hilliard,* cited 7 *Cowen,* 385.

2. That the testimony of *Story* regarding the declarations of *Dehone,* was inadmissible. The object of this testimony was to prove a contract by *Dehone,* on behalf of the rail-road com-

pany, or an admission of their liability to pay for the sinking of the earth in the coves as extra work.   *Dehone* had no authority, as a director of the company, or as one of five of the building committee, to bind the company, by such declarations.   The authority, if it existed in the board of directors, or in the building committee, could be exercised only by the action of the whole board, or a majority of them; and this, whether it were of a public or private nature.   *Patterson* v. *Leavitt*, 4 *Conn. R.* 50. 53.   *Hartford Bank* v. *Hart*, 3 *Day*, 491.   *Guppy* & al. v. *Brown*, 4 *Dall. R.* 410.   *The King* v. *Beeston*, 3 *Term R.* 592.   *Withnell* v. *Gartham*, 6 *Term R.* 388.   *Green* v. *Miller*, 6 *Johns. R.* 39.   *City of Baltimore* v. *Bateman*, 6 *Har. & Johns.* 104.   *Magill* v. *Kauffman*, 4 *Serg. & Rawle*, 317. 321.   *Stewart* v. *Huntington Bank*, 11 *Serg. & Rawle*, 367. 369.   *Sterling* v. *Marietta and Susquehanna Trading Co. Id.* 179. 180, 1.   *Atlantic Ins. Co.* v. *Conard*, 4 *Wash. C. C. R.* 663. 667.   *Kemp* v. *Baltimore Fire Ins. Co.*, 2 *Gill* & *Johns.* 108.   *Grafton Bank* v. *Woodward*, 5 *N. Hamp. R.* 301.

3. That the court should have ordered a rehearing for the purpose of introducing the testimony of *Dehone.*   See the authorities cited in support of the first position.

*McCurdy* and *E. Learned, jun.* (with whom was *Foster*,) for the defendant in error, contended, 1. That the judgment ought not to be reversed, on account of the testimony of *Story* and himself, regarding the statements of *Lawrie.*   In the first place, this testimony was neither offered nor received to show the construction of the contract, or to controul its operation, but merely to show that *Story* was induced to make it, by the misrepresentations of *Lawrie.*   This was surely proper evidence to prove fraud.   Secondly, the admissibility of this testimony, though adverted to by counsel in argument, was not definitively passed upon, by the auditors.   But thirdly, the auditors found, that there was no fraud, and that the contract was a valid and subsisting one.   The plaintiffs in error, therefore, have nothing to complain of.   The testimony in question has not hurt them.   *Alling* v. *Shelton*, 16 *Conn. R.* 436. 442.

2. That the declarations of *Dehone* were admissible.   He was one of the directors, and one of the building committee,

*New-London*,
July, 1847.

Norwich and
Worcester
Rail-road Co.
*v.*
Cahill.

New-London,
July, 1847.
───────────
Norwich and
Worcester
Rail-road Co.
v.
Cahill.

and was acting as such, at the time of the conversation between him and *Story*. *Dehone* was, therefore, the authorized agent of the company, and was acting within the scope of his authority, at the time. 2 *Stark. Ev.* 60. *American Fur Co.* v. *The United States*, 2 *Pet.* 358. 364. *The United States* v. *Gooding*, 12 *Wheat.* 468, 9. *Mather* v. *Phelps*, 2 *Root*, 150. *Perkins*, admr. v. *Burnet, Id.* 30. Secondly, these declarations tended to prove, that the company, by their agents, knew that the work was extra, and to be paid for as such, and that they assented to it. Such knowledge and assent alone would bind the company. *Jewell* & al. v. *Schroeppel*, 4 *Cow.* 564. *Dubois* v. *The Delaware and Hudson Canal Company*, 12 *Wend.* 334. 1 *Sw. Dig.* 173. *Williams* v. *Mitchell*, 17 *Mass. R.* 98. *Odiorne* v. *Maxcy*, 13 *Mass. R.* 178. Thirdly, it was not necessary to prove the assent of all, or a majority, of the directors and building committee, in order to render the evidence admissible. The plaintiff might begin with proof of the acts and declarations of one, and follow this up with similar proof as to the others.

3. That the defendants had no right to be surprised by evidence of the declarations of *Dehone*. In the first place, they knew that the plaintiff must prove his case, by the acts and declarations of the agents of the company; and it might be, by those of *Dehone*, as well as of any others. *The People* ex relat. *Oelricks* v. *The Superior Court of the City of New-York*, 10 *Wend.* 285. Secondly, no postponement was asked for, to procure *Dehone's* attendance. 1 *Sw. Dig.* 787. Thirdly, a new trial will not be granted, unless it appears that injustice has been done; and the petition must state the whole evidence, and show that the new testimony would change the result. 1 *Sw. Dig.* 786. Fourthly, the decision of the superior court refusing to grant a new trial, is not the subject of error. *Magill* v. *Lyman* & al. 6 *Conn. R.* 59. *Lewis* v. *Hawley*, 1 *Conn. R.* 49. *Granger* v. *Bissell*, 2 *Day*, 364.

WAITE, J. With respect to the claim of the plaintiffs in error in relation to the testimony as to the declarations of *Lawrie*, but one answer need be given; and that is, the testimony has done them no harm. It was offered in support of a single issue, and that issue was found in their favour.

The plaintiff below claimed, that the contract made by the

company with *Story*, was void, by reason of the fraudulent representations of *Lawrie* ; and to show that fraud, the testimony was offered. The auditors found, that all the evidence offered by him failed to prove the fraud, and consequently, found the contract a valid one.

New-London,
July, 1847.

Norwich and
Worcester
Rail-road Co.
*v.*
Cahill.

The omission of the auditors to determine the question as to the admissibility of the testimony, does not vary the case. Which ever way the question is decided, the result is the same.

The claim respecting an adjournment for the purpose of procuring the attendance of *Lawrie* to disprove the testimony as to his declarations, stands upon the same ground. The plaintiffs in error have not been injured by his absence.

And then, as to the testimony of *Story* in relation to the acts and declarations of *Dehone*. The claim of the plaintiff in error, in this part of the case, is twofold : first, that the testimony was inadmissible ; and secondly, if admissible, a new trial ought to have been granted, by the court below, to enable them to procure *Dehone*, as a witness, to disprove that testimony.

And in the first place, was the testimony admissible ? Under what circumstances was it offered ? The claim of the plaintiff below was this. *Story* had made a contract with the company to build their extension railroad ; and then made another contract with the plaintiff, by which the latter was to build a certain portion of that road. The plaintiff built the road according to his contract ; but the embankments across two coves on the route, settled, so as to require additional work ; and the company, by their agents, employed him to do that work ; to recover for which, he brought his action.

Such was the claim of the plaintiff ; and in support of it, he called *Story* as a witness, to prove what *Dehone*, one of the directors of the company, and one of the committee for building the road, had said and done, as the agent of the company, in relation to that work.

From that testimony, it appears, that when the additional work became necessary, *Dehone* enquired of the witness, what was to be done, in consequence of the settling of the embankments. *Story* asked him, if the company expected him to do the work at the coves, where it had settled. *Dehone* replied, that the company did not expect him to pay the ex-

*New-London,*
*July, 1847.*
―――――――――
Norwich and
Worcester
Rail-road Co.
*v.*
Cahill.

expense,—they only wanted to know his opinion as to the best mode of doing it.

This was said by *Dehone,* who was the agent of the company, while acting within the scope of his authority. For, as one of the directors, and one of the building committee, it was his duty to see that the road was completed, and in a proper manner. If *Story* had failed to perform the work according to his contract, it was his duty to see that the requisite measures were taken to enforce the fulfillment. On the other hand, if that contract had been fulfilled, and additional work was required in consequence of an unforeseen event, it was his duty to see that some person was employed to perform that work. It was necessary that the road should be built. The company could only act in relation to it, by means of their agents, one of whom was *Dehone.* Now, the rule upon this subject is very correctly stated, by *Starkie,* in his treatise on *Evidence :* "Whatever an agent says, while acting within the scope of his authority, the principal says ; and evidence may be given of such acts and declarations, as if they had been actually done and made by the principal himself." 2 *Stark. Ev.* 34. *Baring* v. *Clark,* 19 *Pick.* 226. *American Fur Co.* v. *United States,* 2 *Peters' R.* 358.

But it is said, that the declarations were unaccompanied by any acts of the agent, rendering them admissible. That *Dehone* was one of the agents of the company, is not denied. And it appears, that at the time, he was actually inquiring as to the best mode of making the necessary repairs. In this respect, the case differs materially from that of *Snowball* v. *Goodricke,* 4 *B. & Adol.* 541. (24 *E. C. L.* 112.) where the plaintiff offered in evidence against a sheriff, declarations made by his under-sheriff, after the latter had gone out of office.

Again, it is said, that these declarations were made, by one of several agents, who had no power alone to bind the company. But the question was, not as to the sufficiency and effect of the declarations, but whether they were admissible, as evidence. For aught that appears, there might have been other evidence in relation to the acts of the other agents. Indeed, the case states, that, among other evidence, this testimony was offered ; thereby implying that there was other

evidence upon the subject. But however this may be, the plaintiffs in error cannot avail themselves of the objection in that form, because it was not so made on the trial.

*New-London,*
July, 1847.

Norwich and
Worcester
Rail-road Co.
*v.*
Cahill.

In the next place, if the testimony was admissible, did the court below err, in refusing to grant a new trial, for the purpose of enabling the plaintiffs in error to procure the attendance of *Dehone*, as a witness, to contradict that testimony?

This was a matter entirely within the discretion of the court, and as such, furnishes no ground for a writ of error. The authorities upon this subject are numerous and decisive. *Lester* v. *The State*, 11 *Conn. R.* 418. *White* v. *Trinity Church*, 5 *Conn. R.* 187. *Magill* v. *Lyman*, 6 *Conn. R.* 59. *Lyman* v. *Magill*, 6 *Conn. R.* 69.

But was this discretion improperly exercised? Were a new trial granted, how does it appear, that a different result would be produced? The only evidence which the plaintiffs in error show that they can produce upon another trial, is that of *Dehone*, merely to contradict the testimony of *Story* as to his declarations; and it is no where shown by them, that there was not other testimony besides that of *Story*, proving the declarations made by *Dehone*.

How can the court see, that the testimony of *Dehone* would overbalance that of *Story* ; or if it did, that there was not an abundance of other evidence to support the claim of the plaintiff, aside from the testimony of *Story ?* Enough is not shown to make it appear that injustice was done on the trial.

Again, why was not *Dehone* produced on the trial as a witness ? The plaintiffs in error knew, or had the means of knowing, for what they were sued ; for they were entitled to oyer of the account of the defendant in error. They also knew, that *Dehone*, at the time the services were performed, was one of their agents, who had power, if necessary, to employ the defendant to perform the work charged. Why were not their agents produced on the trial, to show what contracts they had made ? There may have been good reason for this omission ; but it is not shown. A new trial will never be granted for the purpose of admitting further evidence, if that evidence might have been adduced on the former trial, by the use of due diligence. *Barber* v. *Brace, 3 Conn. R. 9.*

*New-London,*
*July, 1847.*

Norwich and
Worcester
Rail-road Co.
*v.*
Cahill.

The judgment of the superior court must, therefore, be affirmed.

In this opinion the other judges concurred.

Judgment affirmed.